**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 15 2022

JEFFREY P. COLWELL
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-CV-_____

NICHOLAS N. KAZARINOFF,
LINDA COYOTE KAZARINOFF,

      Plaintiffs,

v.

JEFFREY R. WILSON, individually and in his official capacity as Chief Judge of
the Colorado 6th Judicial District,
TODD WEAVER, individually and in his official capacity as County Attorney of
Archuleta County,
WARREN BROWN, individually and in his official capacity as County
Commissioner of Archuleta County,
ALVIN SCHAFF, individually and in his official capacity as County Commissioner
of Archuleta County,
RONNIE MAEZ, individually and in his official capacity as County Commissioner of
Archuleta County,
JOHN DOES 1-3, individually and in their official capacities as Deputies of the La
Plata County Sheriff's Office,
SEAN SMITH, individually and in his official capacity as Sheriff of La Plata
County,
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF
ARCHULETA,
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LA PLATA,

      Defendants.

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

      This Complaint, brought pursuant to 42 U.S.C. § 1983, U.S. Const., Art. IV, §

2, and the First, Fifth and Fourteenth Amendments to the United States

Constitution, arises out of Defendants commission of federal and state

constitutional violations committed against the Plaintiffs in Archuleta and La Plata Counties in 2021. Plaintiffs seek redress for grievances against all Defendants for violations of rights which incorporate both criminal and civil penalties.

## INTRODUCTION

1.      Beginning in 2017 and lasting until late 2019, several public servants of Archuleta County made multiple demands that a portion of Plaintiffs' private property be made available for public use. Plaintiffs repeatedly requested proof of a legal obligation that would require Plaintiffs to comply with said demands, but no such proof was ever provided.

2.      In late 2019, Archuleta County filed a civil lawsuit against Plaintiffs, claiming a legal right to ownership of Plaintiffs' private property via adverse possession. Defendants used said civil suit to deprive Plaintiffs of property and the rights to access to the courts, to due process of law, and to just compensation.

3.      Plaintiffs petition this Court to convene a federal grand jury to investigate what Plaintiffs believe to be violations of federal law by all Defendants, incorporating 18 U.S.C. §§ 241, 242 and 1962.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, as the acts and omissions of all Defendants were done under color of state law and resulted in the deprivation of rights secured by the United States Constitution.

C1.6-cm20220914-BOCC001

5.      Venue is appropriate as Plaintiffs and all Defendants reside or operate within the district boundaries of The United States District Court for the District of Colorado.

## PARTIES

6.      The Plaintiffs, Nicholas N. and Linda Coyote Kazarinoff ("Plaintiffs"), were at all times relevant hereto residents of the state of Colorado.

7.      Defendant Jeffrey R. Wilson ("Wilson") is and was at all times relevant hereto the sworn Chief Judge of the Colorado 6th Judicial District. He is named here in his official and individual capacities, and is a citizen of the state of Colorado.

8.      Defendant Todd Weaver ("Weaver") is and was at all times relevant hereto the sworn County Attorney of Archuleta County. He is named here in his official and individual capacities, and is a citizen of the state of Colorado.

9.      Defendant Warren Brown ("Brown") is and was at all times relevant hereto a sworn County Commissioner of Archuleta County. He is named here in his official and individual capacities, and is a citizen of the state of Colorado.

10.     Defendant Alvin Schaff ("Schaff") is and was at all times relevant hereto a sworn County Commissioner of Archuleta County. He is named here in his official and individual capacities, and is a citizen of the state of Colorado.

11.     Defendant Ronnie Maez ("Maez") is and was at all times relevant hereto a sworn County Commissioner of Archuleta County. He is named here in his

C1.6-cm20220914-BOCC001

official and individual capacities, and is a citizen of the state of Colorado.

12.     Defendants John Does 1-3, upon information and belief, were at all times relevant hereto sworn Deputies of the La Plata County Sheriff's Office. They are named here in their individual and official capacities, and are believed to be citizens of the state of Colorado.

13.     Defendant Sean Smith ("Smith") is and was at all times relevant hereto the sworn Sheriff of La Plata County. He is named here in his official and individual capacities, and is a citizen of the state of Colorado.

14.     Defendant Board of County Commissioners of the County of Archuleta ("Archuleta County") is a body corporate and politic doing business as COUNTY OF ARCHULETA, and is a political subdivision of the state of Colorado located at 449 San Juan St., Pagosa Springs, Colorado, 81147.

15.     Defendant Board of County Commissioners of the County of La Plata ("La Plata County") is a body corporate and politic doing business as LA PLATA COUNTY, and is a political subdivision of the state of Colorado located at 1101 E. 2nd Ave., Durango, Colorado 81301.

## FACTS

16.     On or about May 26th, 2009, Plaintiffs completed the purchase of the private property located at 86 Hummingbird Place, Pagosa Springs, Colorado, 81147 ("Private Property"). At the time Plaintiffs acquired ownership of Private

C1.6-cm20220914-BOCC001

Property, there were no existing easements or contracts that would require Plaintiffs to allow any portion of Private Property be used for public use.

17.     According to an Affidavit executed by the previous owner of Private Property, Charlotte Benefield, who owned Private Property jointly with her ex-husband from 1985 through 2007, and then solely from 2007 until ownership was transferred to Plaintiffs in 2009, there were never any improvements made to any portion of Private Property, nor any indication of any improvements having ever been made by anyone. Mrs. Benefield also indicated that at some point she had given a representative from the Aspen Springs Metropolitan District ("ASMD") verbal permission to use a portion of Private Property as a turnaround. This verbal agreement was never mentioned to Plaintiffs.

18.     On or about August 11th, 2009, Plaintiffs put up a chain along the northern boundary of Private Property. This chain remained in place until August 13th, 2009. Plaintiffs continued the practice of chaining off the northern boundary of Private Property for 3 days every year, August 11th through August 13th, until late 2017, when Plaintiffs put up a permanent gate.

19.     On or about November 16th, 2017, ASMD sent a letter ("Initial Claim") to Plaintiffs, alleging that "Linda Rickey" was blocking a legal right of way on a cul-de-sac alleged to be owned by Defendant Archuleta County.

20.     On or about November 26th, 2017, Plaintiffs responded to this Initial

C1.6-cm20220914-BOCC001

Claim with a letter of their own ("Initial Response"), informing ASMD that Plaintiffs' fence and chain were fully located within the legal boundaries of Private Property.

21.     On or about December 12th, 2017, Plaintiff Nicholas Kazarinoff attended an ASMD meeting where one Ronnie Zaday made a claim that part of Plaintiffs' Private Property was owned by Archuleta County through adverse possession. At this same meeting, one Dick Warring, then Chairperson of ASMD and husband of Mrs. Zaday, demanded Plaintiffs take down the fence and chain.

22.     In response to Mr. Warring's demand, Plaintiff Nicholas Kazarinoff informed Mr. Warring that Plaintiffs would research to see if any easements or contracts existed that would impose a legal obligation upon Plaintiffs to comply.

23.     On or about December 14th, 2017, Plaintiffs inquired with the Archuleta County Clerk about any existing easements or contracts on Private Property that would require Plaintiffs to allow a portion of Real Property be used for public use. No existing easements or contracts were found.

24.     On or about December 17th, 2017, Plaintiff Nicholas Kazarinoff hand delivered a second letter ("Second Letter") to ASMD, specifically to one Shane Tuller. This Second Letter asked ASMD to produce the easement ASMD was using to claim Plaintiffs had a legal obligation to comply with Mr. Waring's demand to

C1.6-cm20220914-BOCC001

take down the chain and fence fully located within the legal boundaries of Plaintiffs' Private Property. ASMD failed to respond to this Second Letter.

25.     Sometime in January, 2018, Plaintiffs attended an Archuleta County Board of County Commissioners ("BOCC") working session, where ASMD complained to the BOCC that Plaintiffs' fence and chain were blocking a legal right of way. Plaintiff Nicholas Kazarinoff informed BOCC that said fence and chain were located fully within the legal boundaries of Private Property.

26.     At this BOCC meeting, an unknown employee of the BOCC pulled up a map of the Aspen Springs 3 Subdivision (where Private Property is located) and displayed it upon an overhead projector. Said map clearly showed the legal road right of way ended at the northern boundary of, and not upon, Private Property.

27.     Sometime in January or February 2018, then County Attorney Todd Star sent a letter to Plaintiffs in which Mr. Star made the statement that "roads are wherever they are."

28.     On or about March 1st, 2019, Defendant Weaver filed a civil lawsuit ("Takings Suit") on behalf of Defendant Archuleta County, in which the following claims were made: (1) "the southern end of Oak Ridge Road terminates on the northern boundary of Defendants' Property; (2) the turnaround for the southern end of Oakridge Road (the 'Turnaround') is located on Defendants' Property; (3) "the

C1.6-cm20220914-BOCC001

County and ASMD…" "… has snowplowed, bladed, graded and/or otherwise maintained the Turnaround *continuously* since at least 1983." (Emphasis added).

29.     Plaintiffs hired attorney Paul Koznik to represent them in the Takings Suit. On or around July 26th, 2019, Mr. Koznik filed an Answer on behalf of Plaintiffs. After this Answer was filed, litigation continued for almost two years, costing Plaintiffs nearly $15,000. Sometime in April, 2021, Mr. Koznik informed Plaintiffs that Defendant Archuleta County wished to drop the Takings Suit on the condition that Plaintiffs would not seek to recover attorneys fees and damages. Plaintiffs declined this offer, prompting Mr. Koznik to file a Request to Withdraw, which was granted on or about May 7th, 2021.

30.     On or about August 30th, 2021, trial for the Takings Suit was held at the La Plata County courthouse. Plaintiffs attempted to exercise their right to access to the court but were barred entry by Defendants John Does 1-3.

31.     Defendant Wilson, the presiding judge, was aware that Plaintiffs were at the courthouse trying to access the court. Instead of ordering that Plaintiffs be allowed access to the court, Defendant Wilson barred Plaintiffs and continued the trial without Plaintiffs present. At this trial, effectively a star-chamber, Defendant Wilson found in favor of Defendant Archuleta County and instructed Defendant Weaver to present the court with a description of the private property that Defendant Archuleta County wished to seize from Plaintiffs.

C1.6-cm20220914-BOCC001

32.     On or about August 30th, 2021, a document titled "Order After Court Trial" was filed into the Takings Suit, in which Defendant Wilson made the false claim that Plaintiffs "chose not to appear in person… ." Defendant Wilson also ordered private property be seized from Plaintiffs under "… adverse possession pursuant to CRS 43-2-101(1)(c)… ", as well as granted a permanent injunction preventing Plaintiffs from interfering with travel on the portion of Private Property that had been seized.

33.     On or about November 17th, 2021, James Martinez, Carey Brown and another Unknown person came upon Private Property, destroyed Plaintiffs' gate, and drove heavy machinery upon other parts of Plaintiffs' Private Property without permission. These acts deprived Plaintiffs of the full enjoyment and use of Private Property and diminished the value of Private Property.

## CLAIMS

34.     Based upon information and belief, Plaintiffs contend that all Defendants have sworn oaths to uphold and defend the Colorado Constitution and the U.S. Constitution, and to faithfully execute the laws of the state of Colorado.

### COUNT ONE - DEPRIVATION OF RIGHT TO JUST COMPENSATION UNDER 42 U.S.C. 1983 - VIOLATIONS OF THE FIFTH AND FOURTEENTH AMENDMENTS
**(Failure to Justly Compensate Plaintiffs After Taking Private Property for Public Use)**

C1.6-cm20220914-BOCC001

35.    The previous paragraphs are hereby incorporated by reference as though fully restated herein.

36.    Colo. Const., Art. II, § 15 provides "Private property shall not be taken or damaged, for public or private use, without just compensation." U.S. Const. amend. V provides, in parte, "… nor shall private property be taken for public use, without just compensation… ."

37.    Colo. Rev. Stat. § 38-1-101(1)(a) provides "… in order to protect property rights, without the consent of the owner of the property, private property shall not be taken or damaged by the state or any political subdivision for a public or private use without just compensation."

38.    Colo. Rev. Stat. § 30-11-103 provides "The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners therefor."

39.    Based upon information and belief, Plaintiffs have reason to believe the following: (1) Defendants Brown, Schaff, and Maez were given regular open litigation updates regarding the Takings Suit by Defendant Weaver; (2) Defendants Brown, Schaff, and Maez authorized the continued litigation of the Takings Suit; (3) Defendant Maez, when asked what he thought about the resulting judgment of the Takings Suit, replied that what was done to Plaintiffs was "a good thing".

C1.6-cm20220914-BOCC001

40.     No person who has sworn an oath to uphold and defend the Colorado and U.S. Constitutions could reasonably claim they were unaware of the prohibition on the taking of private property for public use without just compensation.

41.     Defendant Archuleta County, via its policy makers Defendants Brown, Schaff, and Maez, and together with Defendants Weaver and Wilson, jointly participated in, and effected, the taking of Plaintiffs' private property for public use without just compensation. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by said Defendants.

42.     Defendant Archuleta County failed to provide adequate training to its employees. Upon information and belief, this is not the first time Defendant Archuleta County, via its policy makers and employees, has taking private property for public use without just compensation. This claim will be proven through admissible evidence obtained via discovery and witness testimony.

43.     As a result of the Defendants' acts and omissions set forth in this Count One, Plaintiffs suffered damages for which they are entitled to relief.

### COUNT TWO - DEPRIVATION OF RIGHT TO DUE PROCESS OF LAW UNDER 42 U.S.C. 1983 - VIOLATIONS OF THE FIFTH AND FOURTEENTH AMENDMENTS
**(Taking of Plaintiffs' Real Property Absent Due Process of Law)**

44.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

C1.6-cm20220914-BOCC001

45.     Colo. Const., Art. II, § 25 provides "No person shall be deprived of life, liberty or property, without due process of law."

46.     U.S. Const. Amend. V provides, in parte, "… nor be deprived of life, liberty, or property, without due process of law… ."

47.     U.S. Const. Amend. XIV, § 1 provides, in parte, "… nor shall any state deprive any person of life, liberty, or property, without due process of law."

48.     Colo. Const., Art. II, § 15 provides, in parte, "… Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public."

49.     Colo. Rev. Stat. §§ 38-1-101(1)(a) and 38-1-101(2)(a) provide the procedures that must be followed in condemnation actions in order to protect property rights. Colo. Rev. Stat. § 38-1-101(2)(a) provides "In all cases in which compensation is not made by the state in its corporate capacity, such compensation shall be ascertained by a board of commissioners of not less than three disinterested

C1.6-cm20220914-BOCC001

and impartial freeholders pursuant to section 38-1-105 (1) or by a jury when required by the owner of the property as prescribed in section 38-1-106. All questions and issues, except the amount of compensation, shall be determined by the court unless all parties interested in the action stipulate and agree that the compensation may be so ascertained by the court. In the event of such stipulation and agreement, the court shall proceed as provided in this article for the trial of such causes by a board of commissioners or jury."

50.     No person who has sworn an oath to uphold and defend the Colorado and U.S. Constitutions and to faithfully execute the laws of the state of Colorado could reasonably claim they were unaware of the following: (1) the requirement to provide substantive and procedural due process of law before taking property; (2) the procedural requirements required by state law when taking private property for public use.

51.     Defendant Archuleta County, via its policy makers Defendants Brown, Schaff, and Maez, and together with Defendants Weaver and Wilson, jointly participated in, and effected, the deprivation of Plaintiffs' right to due process of law before taking Plaintiffs' property. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by said Defendants.

C1.6-cm20220914-BOCC001

52.     Defendant Archuleta County failed to provide adequate training to its employees. Upon information and belief, this is not the first time Defendant Archuleta County, via its policy makers and employees, has deprived the people of rights in absence of due process of law. This claim will be proven through admissible evidence obtained via discovery and witness testimony.

53.     As a result of the Defendants' acts and omissions set forth in this Count Two, Plaintiffs suffered damages for which they are entitled to relief.

## COUNT THREE - DEPRIVATION OF RIGHT TO ACCESS TO THE COURT UNDER 42 U.S.C. 1983 - VIOLATIONS OF THE FIRST, FIFTH & FOURTEENTH AMENDMENTS & ARTICLE IV PRIVILEGES AND IMMUNITIES CLAUSE
**(Barring Plaintiffs' Access to the Court)**

54.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

55.     Colo. Const., Art. II, § 6 provides "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay."

56.     Colo. Const., Art. VI, § 5, pt. 4 provides, in parte, "… Each chief judge shall have and exercise such administrative powers over all judges of all courts within his district as may be delegated to him by the chief justice."

57.     It is well established that access to the court is a constitutional right. "Access to the courts is clearly a constitutional right, grounded in the First

14

Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment. *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (noting the Supreme Court's past reliance on all of these bases); *see also Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1370 (11th Cir.1993) (grounding the right of access to courts in the First Amendment). To pass constitutional muster, access to the courts must be more than merely formal; it must also be adequate, effective, and meaningful. *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir.1983) (citing *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977))." *See Chappell v. Rich*, 340 F.3d 1279 (2003) Aug. 11, 2003 United States Court of Appeals for the Eleventh Circuit No. 02-10200 340 F.3d 1279."

58.     While the chief justice of the Colorado Supreme Court has the constitutional authority to delegate administrative powers to a chief judge, the Colorado Constitution limits the scope of said power to only over *judges* within the judicial district in which the chief judge presides. Nowhere in the Colorado Constitution is any member of the judicial branch granted administrative power to deprive the people of rights in absence of due process of law. (Emphasis added).

59.     Colo. Rev. Stat. § 18-11-102(1) provides "Any person who, with the intent by force of arms to obstruct, retard, or resist the execution of any law of this

C1.6-cm20220914-BOCC001

state, engages, cooperates, or participates with any armed force or with an armed force invades any portion of this state commits insurrection."

60.     No person who has sworn an oath to uphold and defend the Colorado and U.S. Constitutions and to faithfully execute the laws of the state could reasonably claim they were unaware of the following: (1) that access to the courts is a constitutional right; (2) that the Colorado Constitution is the supreme law of the state of Colorado; (3) that engaging and cooperating with an armed force to prevent the execution of the laws of the state would be considered an act of insurrection.

61.     Defendant La Plata County, via its policy maker Defendant Smith, and together with Defendants John Does 1-3 and Wilson, jointly participated in, and effected, the deprivation of Plaintiffs' right to access to the court. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by said Defendants.

62.     Defendant La Plata County failed to provide adequate training to its employees. Upon information and belief, this is not the first time Defendant La Plata County, via its policy makers and employees, has deprived the people of the right of access to the court in absence of due process of law. This claim will be proven through admissible evidence obtained via discovery and witness testimony.

63.     As a result of the Defendants' acts and omissions set forth in this Count Three, Plaintiffs suffered damages for which they are entitled to relief.

C1.6-cm20220914-BOCC001

## COUNT FOUR - DEPRIVATION OF RIGHT TO DUE PROCESS OF LAW UNDER 42 U.S.C. 1983 - VIOLATIONS OF THE FIFTH AND FOURTEENTH AMENDMENTS
### (Deprivation of Plaintiffs' Right to Due Process of Law Before Depriving Plaintiffs of Just Compensation)

64.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

65.     Plaintiffs have the right to freely exercise their constitutionally secured rights. When a political subdivision seeks to restrict or deprive Plaintiffs of these rights, Plaintiffs have the right to due process of law before said restriction or deprivation occurs.

66.     Defendant Archuleta County, via its policy makers Defendants Brown, Schaff, and Maez, and together with Defendants Weaver and Wilson, jointly participated in, and effected, the deprivation of Plaintiffs' right to due process of law before depriving Plaintiffs of their right to just compensation. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by said Defendants.

67.     Defendant Archuleta County failed to provide adequate training to its employees. Upon information and belief, this is not the first time Defendant Archuleta County, via its policy makers and employees, has deprived the people of the right to due process of law before depriving the people of rights secured by the

C1.6-cm20220914-BOCC001

Colorado and U.S. Constitutions. This claim will be proven through admissible evidence obtained via discovery and witness testimony.

68.     As a result of the Defendants' acts and omissions set forth in this Count Four, Plaintiffs suffered damages for which they are entitled to relief.

<u>COUNT FIVE - DEPRIVATION OF RIGHT TO DUE PROCESS OF LAW</u>
<u>UNDER 42 U.S.C. 1983 - VIOLATIONS OF THE FIFTH AND</u>
<u>FOURTEENTH AMENDMENTS</u>
**(Deprivation of Plaintiffs' Right Due to Process of Law Before**
**Depriving Plaintiffs' of the Right to Access to the Court)**

69.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

70.     It is well settled that emergency does not create power. "Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved. The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 425 (1934).

71.     As set forth in ¶ 65, Plaintiffs have the right to due process of law before being deprived of property (including rights).

72.     Defendant La Plata County, through its policy maker Defendant Smith, and together with Defendants John Does 1-3 and Wilson, jointly participated

C1.6-cm20220914-BOCC001

in, and effected, the deprivation of Plaintiffs' right to due process of law before depriving Plaintiffs of their right to access to the court. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by said Defendants.

73.     Defendants La Plata County and Smith failed to provide adequate training to their employees. Upon information and belief, this is not the first time Defendant La Plata County, via its policy makers and employees, has deprived the people of the right to due process of law before depriving the people of rights secured by the Colorado and U.S. Constitutions. This claim will be proven through admissible evidence obtained via discovery and witness testimony.

74.     As a result of the Defendants' acts and omissions set forth in this Count Five, Plaintiffs suffered damages for which they are entitled to relief.

## COUNT SIX - UNCONSTITUTIONAL TAKING UNDER 42 U.S.C. 1983 - VIOLATIONS OF THE FIFTH AND FOURTEENTH AMENDMENTS
### (Unconstitutional Taking - Inverse Condemnation)

75.     The previous paragraphs are hereby incorporated by reference as though fully restated herein.

76.     Plaintiffs do not dispute that the state of Colorado and its political subdivisions have the power of eminent domain. However, the Due Process Clause imposes the following conditions on the exercise of the power of eminent domain: (1) The property must be taken for public use; (2) The state must pay just

C1.6-cm20220914-BOCC001

compensation in exchange for the property; (3) No person must be deprived of property without due process of law.

77.     Similarly, the legal prerequisites for exercising the power of eminent domain in Colorado are as follows: (1) The taking must be for "public use". *See Tanner v. Treasury Tunnel, Mining & Reduction Co.*, 35 Colo. 593, 83 P. 464 (1906). Court to determine if use is public, but legislative declaration is given great weight. *See Board of County Commissioners v. Intermountain*, 655 P.2d 831 (Colo. 1982) and *City & County of Denver v. BLOCK 173*, 814 P.2d 824 (Colo. 1991); (2) The taking must be necessary. The court cannot inquire into the determination of necessity unless made fraudulently or in bad faith. *See State Board of Land Commissioners v. District Court*, 163 Colo. 338, 430 P.2d 617 (1967); (3) The condemning authority must engage in good faith negotiations with a bona fide offer, as well as provide the property owners with a reasonable length of time to consider such offer.

78.     Defendant Archuleta County, via Defendants Brown, Schaff and Maez, through the Takings Suit, claims the taking of Plaintiffs' private property was for public use.

79.     Defendants Archuleta County, Brown, Schaff and Maez all failed to engage in good faith negotiations and make Plaintiffs a bona fide offer with reasonable time to consider such an offer. Instead, said Defendants initiated a civil

C1.6-cm20220914-BOCC001

suit in an effort, through adverse possession, to take private property for public use without paying just compensation.

80.    Defendant Archuleta County failed to prove the necessity of the taking. In fact, Carey Brown, in an affidavit filed into the Taking Suit, admitted there had been discussion around building a turnaround "within the Oak Ridge Drive right of way", but that this was not feasible because "the Metro District had no funds to do that". There are no provisions in the Colorado or U.S. Constitutions, nor in state law, that would allow a condemning authority to sidestep the necessity requirement based on "a lack of funds."

81.    Defendants Archuleta County, Brown, Schaff and Maez, through the Takings Suit, falsely alleged that ASMD and Defendant Archuleta County had "maintained the Turnaround *continuously* since at least 1983." This is a factually unsustainable claim, one that was perpetuated by Defendant Weaver and ignored by Defendant Wilson. The legal definition of "continuously" is as follows: "Uninterruptedly; in unbroken sequence; without intermission or cessation; without intervening time; with continuity or continuation." See *Blacks Law Dictionary*. 291 (5th ed. 1979). Without a continuous and uninterrupted use or possession, the claim of adverse possession, if it even applied in the Takings Suit, was clearly unsupported by any facts. (Emphasis added).

C1.6-cm20220914-BOCC001

82.     Plaintiffs were deprived of due process of law and just compensation before the taking of private property for public use.

83.     Based upon the facts set forth above, only *one* of the state and federal requirements for a condemnation action was met; the claim of a public use for the private property. The taking of Plaintiffs' private property for public use was *unconstitutional, fraudulent, and executed in bad faith.* (Emphasis added).

84.     Defendant Archuleta County, via its policy makers Defendants Brown, Schaff, and Maez, and together with Defendants Weaver and Wilson, jointly participated in, and effected, the unconstitutional taking of Plaintiffs' private property. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by said Defendants.

85.     Defendant Archuleta County failed to provide adequate training to its employees. Upon information and belief, this is not the first time Defendant Archuleta County, via its policy makers and employees, has effected unconstitutional takings of private property. This claim will be proven through admissible evidence obtained via discovery and witness testimony.

86.     As a result of the Defendants' acts and omissions set forth in this Count Six, Plaintiffs suffered damages for which they are entitled to relief.

## COUNT SEVEN - RETALIATION UNDER 42 U.S.C. 1983 - VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS
### (Against all Defendants by all Plaintiffs)

C1.6-cm20220914-BOCC001

87.   The previous paragraphs are hereby incorporated by reference as though fully restated herein.

88.   Plaintiffs repeatedly requested proof of a legal obligation that would require Plaintiffs to allow a portion of Private Property be used for public use. This act by Plaintiffs was an exercise of the rights to not be deprived of property without due process of law, to acquire, possess, and protect property, to equal protection under the law, and to seek and obtain safety and happiness. The act of exercising rights is safeguarded by the First Amendment to the U. S. Constitution.

89.   When Plaintiffs did not comply with the demands to allow a portion of Private Property be used for public use, an improper use of process was initiated against Plaintiffs. This process, the Takings Suit, sought the following: (1) to assert a fraudulent claim of adverse possession in an effort to sidestep the requirements of eminent domain; (2) to knowingly and willingly deprive Plaintiffs of rights; (3) and to inflict pain and suffering upon Plaintiffs for daring to stand firm in the exercise of said rights.

90.   Plaintiffs attempted to appear before the court to seek remedy and justice in the Takings Suit. This act by Plaintiffs was an exercise of rights to access to the court, to due process of law, and to equal protection under the law. The act of exercising rights is safeguarded by the First Amendment to the U. S. Constitution.

C1.6-cm20220914-BOCC001

91.    When Plaintiffs attempted to exercise the right to access to the court, and refused to have conditions placed upon the free exercise of said right in absence of due process of law, Plaintiffs were denied due process of law, not only for the taking of Plaintiffs' Private Property, but also for the taking of Plaintiffs' right to access to the court. These acts were done to inflict pain and suffering upon Plaintiffs for daring to stand firm in the exercise of said rights.

92.    The callous indifference towards Plaintiffs' rights and complete disregard for the rule of law is partly evidenced by the facts set forth in ¶¶ 28 and 32. Defendant Wilson justified his order to take Plaintiffs' private property for public use by citing "CRS 43-2-101(1)(c)", a statute which does not even exist, while completely ignoring the bizarre claim that Defendant Archuleta County and ASMD had been *continuously* snowplowing, blading, grading and/or otherwise maintaining the Turnaround since 1983. (Emphasis added).

93.    Some public servants in Archuleta County and La Plata County are accustomed to forcing their will upon the people through threats and intimidation. When one of the people attempts to exercise rights, said public servants often retaliate with threats and use of force. The acts of all Defendants alleged in the paragraphs above are not one time acts by rogue public servants. They are acts consistent with the custom of habitual and callous indifference by Archuleta and La

C1.6-cm20220914-BOCC001

Plata County public servants towards the rights of the people. This claim will be proven through admissible evidence obtained via discovery and witness testimony.

94.   All Defendants, motivated to punish and intimidate Plaintiffs for the attempted exercise of rights, all acting together and under color of law, jointly participated in, and effected, a retaliation against Plaintiffs for attempting to exercise rights.

95.   These acts by Defendants were independently unconstitutional, but were also intended to send a warning to Plaintiffs, or anyone else in the community bold enough to assert their rights or criticize Defendants, that such behavior would not be tolerated. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by all Defendants.

96.   The individual Defendants' unconstitutional acts, motivated by retaliatory animus, directly harmed each of the Plaintiffs by chilling Plaintiffs' ability to exercise their First Amendment right to the free exercise of rights, and caused Plaintiffs pecuniary loss and emotional harm and distress.

97.   As a result of the Defendants' acts and omissions set forth in this Count Seven, Plaintiffs suffered damages for which they are entitled to relief.

**COUNT EIGHT - CONSPIRACY TO DEPRIVE**
**CIVIL RIGHTS UNDER 42 U.S.C. 1985**
**(Against All Individual Defendants)**

C1.6-cm20220914-BOCC001

98.    The previous paragraphs are hereby incorporated by reference as though fully restated herein.

99.    All Defendants, in their official and individual capacities, conspired together by acts and omissions, for the purpose of depriving Plaintiffs, either directly or indirectly, of the equal privileges and immunities guaranteed by the U.S. Constitution and the laws of the United States. These acts and omissions were done with deliberate indifference to Plaintiffs' rights and complete disregard for the oaths sworn by said Defendants.

100.    As a result of the Defendants' acts and omissions set forth in this Count Eight, Plaintiffs suffered damages for which they are entitled to relief pursuant to 42 U.S.C. § 1985(3).

## REQUEST FOR RELIEF

1.    Plaintiffs demand compensatory damages in the amount of $320.00 per minute for each full minute that Plaintiffs spent driving to the La Plata County Courthouse and back home in order to appear for the Takings Suit, but were deprived of access to the court and due process of law. Actual time to be determined by the jury.

2.    Plaintiffs demand compensatory damages for the value of the portion of Private Property unconstitutionally taken from Plaintiffs. Actual cost to be determined by the jury.

C1.6-cm20220914-BOCC001

3.     Plaintiffs demand compensatory damages for the destruction of Plaintiffs gate. Actual cost to be determined by the jury.

4.     Plaintiffs demand compensatory damages in the amount of a rental fee of $320.00 per day for every day Plaintiffs have been denied access to, and the use of, private property unconstitutionally taken from Plaintiffs without just compensation. Actual amount to be determined by the jury.

5.     Plaintiffs demand compensatory damages in the amount of $15,000.00 for the cost of representation to defend against the Takings Suit. Actual amount to be determined by the jury.

6.     Plaintiffs demand compensatory damages for the actual cost of this action. Actual amount to be determined by the jury.

7.     Plaintiffs demand treble damages be applied to all compensatory damages demanded in paragraphs 1 through 6, for the willful and knowledgable violations of Plaintiffs' rights and state and federal law, by all Defendants.

8.     Plaintiffs demand general damages in the amount of $320,576,700.00, or an amount the jury deems reasonable and just under the circumstances, for the physical, emotional, and mental anguish the acts and omissions by all Defendants have caused Plaintiffs.

9.     Plaintiffs demand punitive damages in the amount of $320,576,700.00, or an amount the jury deems reasonable and just under the circumstances, for the

C1.6-cm20220914-BOCC001

history of the grossly negligent and intentional acts and omissions by all Defendants which resulted in the deprivation of Plaintiffs' rights.

10.    Plaintiffs request injunctive relief in the form of a court order enjoining all Defendants to the following: (1) cease and desist depriving Plaintiffs of rights secured and guaranteed by the U.S. Constitution in absence of due process of law; (2) cease and desist conspiring to deprive Plaintiffs of said rights; (3) cease and desist the custom of threatening and retaliating against Plaintiffs when Plaintiffs invoke and exercise said rights.

WHEREFORE Plaintiffs request the relief set forth in ¶¶ 1 through 10, and any such other and further relief this Honorable Court may deem reasonable and just under the circumstances.

## PLAINTIFFS DEMAND A TRIAL BY JURY

Dated: 14th day of September, 2022     Respectfully Submitted,

Nicholas N. Kazarinoff / Plaintiff
736 Oak Ridge Drive
Pagosa Springs, Colorado 81147
(970) 903-0556

Linda Coyote Kazarinoff / Plaintiff
736 Oak Ridge Drive
Pagosa Springs, Colorado 81147
(970) 946-7227

C1.6-cm20220914-BOCC001

## VERIFICATION

WE DECLARE under penalty of perjury that we are the plaintiffs in this action and that the information contained herein is true and correct to the best of our knowledge and belief.

Date: _14 September 2022_      _Nicholas N. Kazarinoff_
                                          Nicholas N. Kazarinoff / Plaintiff

Date: _14 September 2022_      _Linda Coyote Kazarinoff_
                                          Linda Coyote Kazarinoff / Plaintiff

SUBSCRIBED AND AFFIRMED BEFORE ME in person, in the county of

Archuleta, State of Colorado, this _14th_ day of _September_ , 2022.

_____
(Notary's Official Signature)

> TIFFANY MARTIN
> Notary Public
> State of Colorado
> Notary ID # 20054013436
> My Commission Expires 05-17-2025

C1.6-cm20220914-BOCC001